UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.S., by and through his guardian ad litem, ELLEN SCUSA,<br><br>            Plaintiff,<br><br>      v.<br><br>PFIZER, INC., et al.,<br><br>            Defendants. | Case No.: 1:13-cv-00524 - LJO - JLT<br><br>ORDER GRANTING PLAINITFF'S MOTION TO REMAND THE ACTION TO KERN COUNTY SUPERIOR COURT<br>(Doc. 7)<br><br>ORDER DENYING LEAVE TO FILE SUR-REPLIES<br>(Docs. 22, 23)<br><br>ORDER DIRECTING THE CLERK OF COURT TO CLOSE THE ACTION |

   Plaintiff A.S., by and through his guardian ad litem Ellen Scusa ("Plaintiff"), seeks remand of the action Kern County Superior Court. (Doc. 7). Plaintiff argues this Court lacks diversity jurisdiction because Defendant McKesson is a citizen of California.

   Defendants Pfizer Inc. and Pfizer International LLC (collectively, "Pfizer"), as well as Wyeth Pharmaceuticals Inc., oppose the motion to remand (Doc. 16). Pfizer argues this Court has jurisdiction because Defendant McKesson was fraudulently joined. Moreover, Pfizer requests the Court stay the action pending resolution of a motion before the Judicial Panel on Multidistrict Litigation. (Doc. 12).

   For the reasons set forth below, Plaintiff's motion to remand is **GRANTED**, and Defendants' motion to stay is **MOOT**.

///

## I. Factual and Procedural History

Plaintiff initiated this action by filing a complaint on January 13, 2013, in Kern County Super Court, Case No. S-1500-CV-278692-LHB. (Doc. 1 at 2; Doc. 1-1 at 8). Plaintiff alleges his mother was prescribed "venlafaxine," which "is manufactured, promoted, distributed, labeled and marketed …under the trade name Effexor" by Defendants Pfizer; McKesson Corporation, individually and doing business as Northstar RX LLC ("McKesson"); and Wyeth Pharmaceuticals, Inc. (collectively, "Defendants"). (Doc. 1-1 at 10, 13). Effexor "is a member of the class of drugs known as 'serotoninnorepinephrine reuptake inhibitors' or 'SNRIs,'" and is used to treat anxiety and depressive disorders. *Id.* at 10-11, ¶24. Plaintiff alleges his mother took the medication while pregnant, which resulted in Plaintiff having a "life-threatening congenital heart defect called pulmonary artery stenosis." *Id.* at 14, ¶29. Plaintiff claims McKesson distributed the Effexor which his mother took. *Id*. at 11 ¶ 7.

Plaintiff asserts his heart defect "was a direct result of his mother's ingestion of Effexor during her pregnancy," and that prior to the time she ingested the medication, "Defendants knew through animal studies and post-marketing reports that Effexor was associated with a significant increased risk of cardiac defects in babies whose mothers ingested Effexor during pregnancy." (Doc. 1-1 at 14, ¶¶ 26, 31). In addition, Plaintiff alleges that "the Pfizer Defendants knew or should have known that Effexor was associated with an increased risk of congenital heart defects and other birth defects in babies of mothers who ingest Effexor during pregnancy." *Id.* at 14, ¶31. Plaintiff contends that despite this knowledge, Defendants aggressively and actively promoted Effexor," and that "[t]he Pfizer Defendants touted Effexor as being a safe alternative for pregnant women." *Id.*, ¶ 27.

Plaintiff alleges that "Defendants failed to warn Ms. Scusa, her health care providers, or the public and the medical community" of the risks involved with Effexor (Doc. 1-1 at 15, ¶36). Plaintiff contends, "[a]s manufacturers and distributors of prescription drug products, specifically Effexor and/or generic venlafaxine, each of the Defendants has a duty to adequately communicate warnings to physicians and the medical community (or to patients who could be expected to take the drug) and to exercise due care to conduct safety surveillance for the drug and otherwise ensure that the warnings they are required to disseminate about the drug are accurate and adequate, and that these warnings are

effectively communicated to physicians, pharmacists, and patients using the drug." *Id.* at 19, ¶62. However, Plaintiff contends, "The Pfizer Defendants have never informed doctors of these serious risks, even though third-party research shows the association between Effexor and cardiac defects and several other types of birth defects." *Id.* at 14 ¶ 28. Specifically, Plaintiff asserts each of the Defendants breached its duties because they failed to:

a. ensure Effexor and/or venlafaxine warnings to the medical community, physicians, and Ms. Scusa's physician were accurate and adequate, despite having extensive knowledge of the risks associated with using the drug during pregnancy;

b. ensure that Effexor and/or venlafaxine warnings were effectively communicated to the medical community, physicians and Ms. Scusa, despite having extensive knowledge of the inappropriate use of the drug during pregnancy;

c. conduct post market safety surveillance and report that information to the FDA, the medical community, Ms. Scusa's physicians, Ms. Scusa and other foreseeable users;

d. review all adverse drug event (ADE) information for Effexor and/or venlafaxine, and to report information bearing significantly upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Effexor and/or venlafaxine products to the FDA, medical community, Ms. Scusa's physicians, Ms. Scusa and other like foreseeable users;

e. periodically review all medical literature regarding Effexor and/or venlafaxine products and report to the FDA, the medical community, or other interested individuals significant data concerning the efficacy or safety of Effexor and/or venlafaxine products;

f. independently monitor sales of Effexor and/or venlafaxine products, and the medical literature, which would have alerted them to the fact that Effexor was widely over prescribed, and was being prescribed to pregnancy women and women in their child- bearing years owing to the inadequate warnings provided to doctors;

g. engage in responsible testing, research, and pharmacovigilance practices regarding their Effexor and/or venlafaxine products. including a failure to perform studies and/or monitor, which would accurately determine the risks attendant to using Effexor during pregnancy, and failed to engage in marketing practices designed to minimize the risks associated with Effexor and/or venlafaxine.

(Doc. 1-1 at 19-20, ¶63). Rather, Plaintiff asserts "Defendants falsely and fraudulently represented to Plaintiff's mother, her prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, the FDA, and the public in general that Effexor was safe and effective for its indicated use during pregnancy." *Id.* at 16, ¶43. Notably, however, Plaintiff

3

alleges "Effexor has never been approved by the FDA for use in pregnant women." *Id*. at 14 ¶ 24.

For the foregoing acts, Plaintiff raises the following causes of action: (1) strict liability- failure to warn; (2) negligence; (3) breach of implied warranty; (4) breach of express warranty; (5) deceit by concealment pursuant to Cal. Civil Code §§ 1709, 1710; (6) negligent misrepresentation; and (7) fraud and fraudulent concealment. (*See generally* Doc. 1-1 at 9, 22-28).

Plaintiff filed a proof of service on March 21, 2013, indicating McKesson Corporation was served on February 25, 2013.[1] In addition, Plaintiff filed proofs of service for Pfizer, Inc. and Pfizer International, indicating the companies were served on March 28, 2013. However, Plaintiff filed a "declaration of non-service" as to Wyeth Pharmaceuticals on April 9, 2013.

On April 12, 2013, Pfizer filed a Notice of Removal, thereby initiating the action in this Court. (Doc. 1). Pfizer asserted the action was properly removed pursuant to 28 U.S.C. §§ 1332 and 1441 "because this is a civil action between citizens of different States, in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest." *Id.* at 3. In addition, Pfizer filed a "Statement of Corporate Disclosure" pursuant to Rule 7.1 of the Federal Rules of Civil Procedure in which counsel Daniel Rygorsky certified Wyeth Pharmaceuticals, Inc. is "an indirect wholly-owned subsidiary of Defendant Pfizer Inc." (Doc. 5 at 2). Pfizer filed its answer to the complaint on April 18, 2013. (Doc. 7).

Plaintiff filed the motion to remand the action on April 18, 2013, asserting removal is not proper because there is not complete diversity among the parties. (Doc. 7). Pfizer filed its opposition to the motion on April 8, 2013 (Doc. 16), to which Plaintiff replied on May 18, 2013.[2] (Doc. 18).

Pfizer filed a motion to stay proceedings in the action pending resolution of a motion before the Judicial Panel on Multidistrict Litigation regarding establishment of a multidistrict litigation

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.,* 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D. Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980). Therefore, judicial notice is taken of the court's docket and records in Kern County Case No. S-1500-CV-278692.

[2] Both parties then sought leave to file sur-replies on May 22, 2013 and May 23, 2013 as to the two motions. (Docs. 22, 23) These requests are **DENIED**.

proceeding for federal actions in which the plaintiffs alleged birth defects due to Effexor. (Doc. 12). Plaintiff filed his opposition to the motion on May 15, 2013 (Doc. 17), to which Pfizer filed a reply on May 22, 2013. (Doc. 21).

On May 29, 2013, the Court held a hearing Plaintiff's motion to remand the action to Kern County Superior Court and Pfizer's motion to stay the action.

## II.  Motion to Remand

In the Notice of Removal, Pfizer asserted the Court has diversity jurisdiction over the action because "McKesson has been fraudulently joined [and] its citizenship should be disregarded." (Doc. 1 at 4). According to Pfizer, "Plaintiff's claims against McKesson fail as both a matter of law and under the allegations of the Complaint." *Id.* at 5. On the other hand, Plaintiff contends that "[t]he overwhelming majority of Courts in California have rejected arguments that removal is proper in cases where a California resident has named McKesson Corporation . . . as a defendant and, instead, have determined that remand is appropriate." (Doc.7-1 at 9; *see also* Doc. 7-1 at 26). Further, Plaintiff asserts the notice of removal "is procedurally defective" "because the Notice fails to demonstrate that McKesson joined or consented to removal." *Id.*at 10, 27.

### A.  Removal Jurisdiction

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. *Id.* at § 1446(b). Removal statutes are to be strictly construed, *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego v. Dow Chem.*

*Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute"). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

**B    Diversity Jurisdiction**

The District Court has original jurisdiction over actions in which there is complete diversity of citizenship. *See* 28 U.S.C. § 1332(a). Plaintiff alleges he is a California resident; Pfizer, Inc. is a Delaware Corporation with its principal place of business in New York; and Pfizer International LLC is a New York Corporation. (Doc. 1-1 at 11). In addition, Plaintiff asserts McKesson is a Delaware Corporation with its principal place of business in California. *Id.* Pfizer has established diversity jurisdiction between its companies and Plaintiff, and asserts the requirement of 28 U.S.C. § 1332(a) is satisfied because McKesson is a sham defendant whose presence does not destroy the diversity jurisdiction. As explained by the Ninth Circuit, an exception to the requirement for complete diversity exists when a non-diverse defendant is "fraudulently joined." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

"Fraudulent joinder is a term of art," and does not require an ill motive by a plaintiff. *McCabe*, 811 F.2d at 1339. The Court need not find the joinder was for the purpose of preventing removal. *Briano v. Conseco Life Ins. Co.*, 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000). Rather, joinder is deemed fraudulent if the plaintiff cannot state a cause of action against the non-diverse defendant. *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1175 (E.D. Cal. 2011). The Court must determine that "the plaintiff could not possibly recover against the party whose joinder is questioned." *Id.*; *see also Briano*, 126 F. Supp. 2d at 1296 (explaining a court must find "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court"). When evaluating whether a plaintiff can prevail on the merits of his claim against a defendant who is alleged to have been fraudulently joined, "all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor." *Nasrawi*, 776 F. Supp. 2d at 1170 (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 972 F.2d 1416, 1426 (9th Cir. 1989).

The Court may look beyond the pleadings to determine if a defendant has been fraudulently joined, but "'a plaintiff need only have one potentially valid claim against a non-diverse defendant' to survive a fraudulent joinder challenge." *Nasrawi*, 776 F. Supp. 2d at 1170 (citing *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 993-95 (D. Nev. 2005); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). The party alleging fraudulent joinder has the "heavy burden" of demonstrating by clear and convincing evidence, the non-diverse party has been joined fraudulently. *Hamilton Materials, Inc. v. Down Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009).

Where the moving party must resort to defenses to the merits of the action to demonstrate the defendant was fraudulently named, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is "obvious according to the settled rules of the state." *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). In this event, the defendant has failed to "overcome the "'strong presumption against removal jurisdiction.'" *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992).

**C.     Discussion and Analysis**

Pfizer contends: "Plaintiff has joined his failure-to-warn claims against Pfizer and Wyeth Pharmaceuticals Inc. –which meet all of the requirements for federal diversity jurisdiction – with claims against a non-diverse distributor, McKesson Corp." (Doc. 16 at 9). According to Pfizer, Plaintiff's claims against McKesson fail because (1) a pharmaceutical medicine distributor cannot be held liable for failure to warn under California law, (2) Plaintiff fails to plead facts that establish a causal nexus between McKesson and his alleged injury. (*See id.* at 2).

1.     Learned Intermediary Doctrine

According to Pfizer, "California's learned intermediary doctrine precludes any duty to warn consumers directly," and as such Plaintiff is unable to "establish that McKesson had a duty to warn with respect to the medication." (Doc. 16 at 16). In addition, Pfizer asserts that "the learned intermediary doctrine precludes Plaintiff from establishing the necessary element of causation against McKesson." *Id.*

Under the learned intermediary doctrine, the duty to warn of risks involved with the use of

prescription drugs "runs to the physician, not the patient." *Carlin v. Superior Court*, 13 Cal.4th 1104, 1116 (1996) (emphasis omitted). The California Court of Appeal explained that the rationale behind the learned intermediary doctrine as follows:

> (1) The doctor is intended to be an intervening party in the full sense of the word. Medical ethics as well as medical practice dictate independent judgment, unaffected by the manufacturer's control, on the part of the doctor. (2) Were the patient to be given the complete and highly technical information on the adverse possibility associated with the use of the drug, he would have no way to evaluate it, and in his limited understanding he might actually object to the use of the drug, thereby jeopardizing his life. (3) It would be virtually impossible for a manufacturer to comply with the duty of direct warning, as there is no sure way to reach the patient.

*Carmichael v. Reitz*, 17 Cal. App. 3d 958, 989 (1971) (citation omitted). The doctrine, "where it applies at all, applies *only* if a *manufacturer* provided adequate warnings to the intermediary." *Stewart v. Union Carbide Corp.*, 190 Cal.App.4th 23, 29 (2010); *see also Love v. Wolf*, 226 Cal.App.2d 378, 395 (1964) (explaining that with medication, "if adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer to insure that the warning reaches the doctor's patient for whom the drug is prescribed").

Notably, "[t]he learned intermediary doctrine is a defense to a cognizable cause of action which courts do not ordinarily consider in determining fraudulent joinder." *Martin v. Merck & Co.*, 2005 WL 1984483, at *4 (E.D. Cal. Aug. 15, 2005) (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998)). In any event, the argument that the learned intermediary doctrine should apply by analogy to McKesson as a distributor—rather than a manufacturer—is a tacit admission that this defense does not "obviously" preclude a cause of action against McKesson. On the other hand, the defense applies only where the warning given was adequate based upon "what was scientifically knowable." *Id*. Where the warning fails to provide the doctor with known or knowable information which militates against use of the drug by certain patients, the learned intermediary doctrine does not preclude imposition of liability. *Id*. In California, this includes liability imposed on the distributor. *Id*.

Here, as stated above, Plaintiff alleges Defendants knew of the risks to pregnant women the drug posed and failed to warn of these risks. Despite this, Plaintiff alleges Defendants "touted Effexor as being a safe alternative for pregnant women" despite that the FDA had never approved the drug for

use by pregnant women.  (Doc. 1-1 at 14, ¶¶ 24, 26, 27)  Thus, based upon these factual allegations, the learned intermediary doctrine would not preclude a cause of action against McKesson.

### 2. Comment k and strict liability under California law

Pfizer argues, "Regardless of how Plaintiff couches his claims, this is a failure-to-warn action, and all of Plaintiff's claims rely on his allegation that a purported 'increased risk of congenital heart defects and other birth defects' was not disclosed."  (Doc. 26 at 9).  Pfizer asserts, "McKesson had neither a duty to warn patients directly nor a duty or the opportunity to provide warnings to prescribing physicians," and as a result "it cannot be held liable for failure to warn under California law."  *Id.*

According to Pfizer, "the California Supreme Court's adoption of comment k of the Restatement (Second) of Torts Section 402A precludes liability for prescription medicines based on any theory other than manufacturing defect, which has not been alleged here, or failure to warn."[3] (Doc. 16 at 15) (citing *Skinner v. Warner Lambert Co.*, 2003 WL 25598915[4] (C.D. Cal. Apr. 28, 2003); *Brown v. Superior Court*, 44 Cal. 3d 1049, 1061-62 (Cal. 1988)).

On the other hand, Plaintiff argues "it is well-established under California law that distributors may be held in strict liability for failure to warn."  (Doc. 7-1 at 13) (emphasis omitted) (citing *Martin v. Merck & Co., Inc.*, 2005 WL 1984483, *3 (E.D. Cal., Aug. 15, 2005); *Maher v. Novartis Pharm. Corp.*, 2007 WL 2330713 at *4 (S.D. Cal. Aug. 13, 2007); *Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 994 (1991); *Daly v. General Motors Corp.*, 20 Cal. 3d 725, 739 (1978); *Vandermark v.*

---

[3] Comment k of the Restatement (Second) of Torts Section 402A provides: "There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

[4] The Court declines to follow *Skinner*.  First, the *Skinner* court failed to provide any analysis of *Brown*.  Second, the Central District refused to follow *Skinner* in *Black v. Merck & Company, Inc.*, 2004 WL 5392660 at *4, n 6 (C.D. Cal., Mar. 3, 2004), in which the court recognized that comment k applied to "sellers" which includes distributors.

*Ford Motor Co.*, 61 Cal. 2d 256, 262-63 (1964); *Bostick v. Flex Equipment Co.,* 147 Cal. App. 4th 80, 88 (2007); *Moorhouse v. Bayer*, 2008 WL 2477389, *5 (N.D. Cal., Jun. 17, 2008); *Alaniz v. Merck*, 2005 WL 6124308 (C.D. Cal., Jun. 3, 2005)).  Plaintiff asserts this Court "confirmed that 'strict products liability imposes liability in tort on all participants in the chain of distribution of a defective product." (Doc. 7-1 at 14) (quoting *Mendez*, 2012 WL 1911382, at *2)).  Further, Plaintiff contends "no California court has held that distributors are immune from liability for failure to warn." *Id.* (citing *Maher*, 2007 WL 2330713 at *4).

Generally, under California law, "a defendant involved in the marketing/distribution process has been held strictly liable if three factors are present: (1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process." *Bay Summit Cmty. Ass'n v. Shell Oil Co.*, 51 Cal. App. 4th 762, 773 (1996) (citing *Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 724 (1972)).  Accordingly, California law provides a distributor may be held strictly liable.

Importantly, in *Brown* the California Supreme Court did not address the liability of a distributor of prescription drugs, but only the liability of a manufacturer.  The court observed:

> The test stated in comment k *is to be distinguished from strict liability for failure to warn*. Although both concepts identify failure to warn as the basis of liability, comment k imposes liability only if the manufacturer knew or should have known of the defect at the time the product was sold or distributed. Under strict liability, the reason why the warning was not issued is irrelevant, and the manufacturer is liable even if it neither knew nor could have known of the defect about which the warning was required. Thus, *comment k, by focussing (sic) on the blameworthiness of the manufacturer, sets forth a test which sounds in negligence, while imposition of liability for failure to warn without regard to the reason for such failure is consistent with strict liability* since it asks only whether the product that caused injury contained a defect.

*Brown*, 44 Cal. 3d at 1059, n. 4 (emphasis added).  The court determined "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* at 1069.  Accordingly, *Brown* does not necessarily preclude Plaintiff's claim for strict liability against McKesson as a distributor of Effexor.

Indeed, because Plaintiff claims that the label failed to warn of known or knowable risks to pregnant women, *Brown* does not preclude liability even for the manufacturer.

After considering *Brown*, this Court observed previously, "In the prescription drug context, the California Supreme Court has held that manufacturers of prescription drugs can be held strictly liable for a failure to warn of knowable risks. [Citation] The general rule under California law is that all of the participants in the chain of distribution can be strictly liable for injuries caused by a defective product." *Mendez*, 2012 WL 1911382, at *2 (citing *Bostick v. Flex Equip. Co., Inc.*, 147 Cal.App.4th 80, 88 (2007). California courts have not addressed whether a distributor in prescription drug cases may be held strictly liable. *Id.* Therefore, in *Mendez* the Court declined to find the plaintiff's claim for strict liability against McKesson was not viable under California law. Likewise, in *Hinds v. Zimmer*, the Court concluded *Brown* has not foreclosed strict liability for distribution of a product. *Id.*, 2009 WL 1517893, at *4 (E.D. Cal. June 1, 2009).

Significantly, this Court's rulings are consistent with other courts within the Ninth Circuit which have examined the issue. *See, e.g., Norris v. AstraZeneca Pharmaceuticals LP*, 2012 WL 1944760, at *2-3 (S.D. Cal. May 30, 2012) ("the court concludes that the complaint adequately establishes that a distributor of pharmaceuticals may be liable under California law"); *Moorhouse v. Bayer Healthcare Pharmaceuticals, Inc.*, 2008 WL 2477389, at *6 (N.D. Cal. Jun. 18, 2008) ("it is not obvious according to the settled rules of California that distributors of prescription drugs cannot be held liable for a failure to warn"). Further, as Plaintiff notes, the Central District determined, after *Skinner* was decided that, comment k of the Restatement (Second) of Torts *"does not exempt distributors from strict liability."* *Black v. Merck & Company, Inc.*, 2004 WL 5392660 at *4 (C.D. Cal., Mar. 3, 2004) (emphasis added). Notably, *Black*[5] held that comment k provides refuge for sellers—which includes distributors—only "*if* the products are properly prepared and marketed, and proper warning is given." *Id*. at 4, n.6. Thus, the defendants failed to establish that it was obvious the plaintiff could not state a claim and, as a result, the court determined complete diversity was lacking. *Id.* at 4; *see also Rivera v. AstraZeneca Pharms. LP*, 2012 WL 2031348 (C.D. Cal. June 5, 2012) (collecting cases and finding it

---

[5] As here, *Black* involved a claim that despite knowledge that the drug VIOXX posed significant enumerated risks, Defendants failed to disclosed these risks. *Id.* at *1.

11

was not obvious the plaintiff's claims against McKesson would fail). Thus, the Court cannot find it is obvious Plaintiff's strict liability claim against McKesson fails as a matter of law.

### 3. Preemption

According to Pfizer, McKesson "had no authority to alter the warnings that accompanied Effexor." (Doc. 16 at 20). Pfizer asserts "any attempt by a distributor to change the label would violate federal law, and therefore, state law requiring them to do so is preempted." *Id.* at 21 (citing *PLIVA v. Mensing*, 131 S.Ct. 2567, 2579 (2011)[6]). Thus, Pfizer contends that "failure-to-warn claims against the distributor of an FDA-approved prescription medicine necessarily fail as they are preempted by federal law." *Id.* (citing *In re Fosamax*, 2012 WL 181411 at *3-4 (D.N.J. Jan. 17, 2012)).

Importantly, however, the Supreme Court has explained that federal preemption is a defense to a claim. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13-14 (1983). Further, the Ninth Circuit has determined it is inappropriate to examine whether a plaintiff's claims are preempted by federal law on a motion to remand. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (2009). The Court explained:

> The preemption defense … goes to the merits of the plaintiff's case. When a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, **it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state**.' *Hamilton Materials*, 494 F.3d 1203, 1206 (2007). Rather, the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. **In such a case, the defendant has failed to overcome the 'strong presumption against removal jurisdiction.** ' *Gaus,* 980 F.2d at 566.

*Id.* (emphasis added). Consequently, it is inappropriate to determine whether Plaintiff's claims against McKesson are preempted by federal law.

///

---

[6] Notably, *Mensing* did not involve a distributor but, instead, involved manufacturers of a generic medication who had gained FDA approval to manufacture the drug based upon the Hatch-Waxman Amendments. *Id.* at 2574-2575. These defendants, therefore, were precluded for any effort to modify the warning labels because they were required to exactly reflect that provided on the name brand medication. *Id.* at 2575. Here, at issue is a name brand medication whose manufacturer was permitted to make modifications to the warning label through the CBE ("changes-being effected") process. *Id.*

The facial appeal of the argument that *Mensing* should be extended to distributors of generic and name brand drugs, such to invoke federal pre-emption, is not lost on the Court. However, unless and until this rationale *is* extended, this Court does not conclude that it is obvious that Plaintiff has not stated a claim under California law.

### 4. Adequacy of the complaint

Finally, Pfizer contends Plaintiff's complaint does not establish a causal connection between McKesson and he "has not alleged any fact from which it could be determined that McKesson actually distributed the Effexor allegedly used by his mother during her pregnancy." (Doc. 16 at 25). Pfizer notes this Court determined McKesson was fraudulently joined in an action when the plaintiff "based her claims on the mere fact that 'McKesson is a major distributor of the drug.'" *Id.* at 25-26 (quoting *Aronis v. Merck & Co.*, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005)). Pfizer asserts this finding is consistent with other courts that have determined a distributor was fraudulently joined because the plaintiffs failed to allege a causal link between the distributor and the injury alleged. *Id.* (citing, *e.g.*, *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 291 (S.D. N.Y. 2001)).

Here, however, Plaintiff has not only asserted that McKesson is a major distributor of Effexor, but has alleged also that "Plaintiff is informed and believes Defendant McKesson *distributed the Effexor that was dispensed to Ms. Scusa*. (Doc. 1-1 at 11, ¶ 7) (emphasis added). Such an allegation was absent from the complaint in *Aronis*. Moreover, this Court has recently explained: "The fact that Plaintiff's allegations based on information and belief does not make it 'obvious according to the settled rules of the state' that the complaint fails to state a claim." *Oliver v. McNeil-PPC, Inc.*, 2013 WL 459630, at * 6 (citing *McCabe*, 811 F.2d at 1339; *Mendez v. AstraZeneca Pharmaceuticals LP*, 2012 WL 1911382, at *3 (E.D. Cal. May 25, 2012)).

Under California law, a complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." Cal. Code Civ. Pro. § 425.10(a)(1). This requires "only general allegations of ultimate fact." *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1469-1470 (2006). The Court of Appeal explained: "The plaintiff need not plead evidentiary facts supporting the allegation of ultimate fact. A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim. *Id.* (internal citations omitted). Consequently, contrary to Pfizer's assertion, Plaintiff is not required to allege facts such as from which pharmacy his mother received the Effexor to support his allegation that McKesson was the distributor of the Effexor that his mother ingested.

Plaintiff alleges that "McKesson was engaged in the business of researching, designing,

13

developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, supplying, distributing, marketing, promoting, advertising, selling and/or warranting Effexor." (Doc. 1-1 at 11, ¶ 7). In addition, Plaintiff contends the defendants, including McKesson, knew or should have known of the serious health risks associated with the use of Effexor during pregnancy, but "failed to warn Ms. Scusa, her health care providers, or the public and the medical community of said serious risks." (*Id.* at 15, ¶ 38). According to Plaintiff, "as a direct and proximate result of Effexor's defects and the wrongful conduct, acts, omissions, and fraudulent misrepresentations of Defendants, Plaintiff has suffered significant harm." (*Id.* at 16, ¶ 41). Thus, Plaintiff has alleged a causal link between McKesson and his injuries.

## IV. Conclusion and Order

Plaintiff has articulated a valid theory of liability under California law, and Pfizer has failed to meet the burden of establishing with "clear and convincing evidence" that Defendant McKesson was fraudulently joined in this action. *See Hamilton Materials*, 494 F.3d at 1206. Consequently, the Court lacks diversity jurisdiction over the matter, and remand of the action is appropriate.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion to remand (Doc. 7) is **GRANTED**;
2. Defendants' motion to stay (Doc. 12) is **MOOT**;
3. This matter is **REMANDED** to Kern County Superior Court; and
4. The Clerk of Court is **DIRECTED** to close this matter, because this Order terminates the action in its entirety.

IT IS SO ORDERED.

Dated:   **May 29, 2013**              /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE